AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT

for the

Southern District of California

FILED
JUN 09 2017
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

One Samsung cellular telephone, Model: SM-G531H, IMEI: 351721087993263

Case No. '17MJ1853

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
See Attachment A-5

located in the Southern District of California, there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B-5

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 21 U.S.C. 841(a)(1), 846 | Conspiracy to Distribute Cocaine |

The application is based on these facts:
See attached affidavit of Homeland Security Investigation Special Agent Enrique Torregrosa.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: __________ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

[signature]
*Applicant's signature*

Enrique Torregrosa, HSI Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 6-9-2017 NLS

[signature]
*Judge's signature*

City and state: San Diego, California

Hon. Nita L. Stormes, United States Magistrate Judge
*Printed name and title*

# ATTACHMENT A-5

## PROPERTY TO BE SEARCHED

The property to be searched in connection with an investigation of violations of Title 21, United States Code, Sections 841(a)(1), 846 is described below:

One Samsung cell phone,
Model: SM-G531H,
IMEI: 351721087993263,
S/N: R51H803HHNM

("**Target Telephone 5**"). Agents seized **Target Telephone 5** from the person of Omar GUTIERREZ-Soto near Perris, California incident to his arrest on May 12, 2017. **Target Telephone 5** is currently in the possession of United States Department of Homeland Security, Immigration and Customs Enforcement, Homeland Security Investigations, 2297 Niels Bohr Court, San Diego, California 92154.

## ATTACHMENT B-5

ITEMS TO BE SEIZED

Authorization to search the cellular telephone described in Attachment A-5 includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. The seizure and search of the cellular telephone will be conducted in accordance with the procedures outlined in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephone will be electronic records, communications, and data such as emails, text messages, photographs, audio files, videos, and location data, for the period of April 12, 2017 to May 12, 2017:

a. tending to identify attempts to import cocaine or some other controlled substance from Mexico into the United States and distribute cocaine or some other controlled substances within the United States;

b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation cocaine or some other controlled substance from Mexico into the United States and the distribution of cocaine or some other controlled substances within the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in the importation of cocaine or some other controlled substance from Mexico into the United States and the distribution of cocaine or some other controlled substances within the United States;

d. tending to identify travel to or presence at locations involved in the importation of cocaine or some other controlled substance from Mexico into the United States and the distribution of cocaine or some other controlled substances within the United States, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the subject telephone; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

**which are evidence of violations of Title 21, United States Code, Sections 841(a)(1), 846.**

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Special Agent Enrique Torregrosa, being duly sworn, depose and state as follows:

## INTRODUCTION

1. This affidavit supports an application to search the following target property:

One Azumi cellular telephone, Model L2Z, IMEI: 356656076934586 (**"Target Telephone 1"**) as described in Attachment A-1 and incorporated herein,

One Acatel 1050A cellular telephone, IMEI: 014453005693424 (**"Target Telephone 2"**) as described in Attachment A-2 and incorporated herein,

One AT&T Z222 cellular telephone, IMEI: 86906021712638, S/N: 325452930064 (**"Target Telephone 3"**) as described in Attachment A-3 and incorporated herein,

One Acatel 1050A cellular telephone, IMEI: 014687002551172 (**"Target Telephone 4"**) as described in Attachment A-4 and incorporated herein,

One Samsung cellular telephone, Model SM-G531H, IMEI: 351721087993263 (**"Target Telephone 5"**) as described in Attachment A-5 and incorporated herein,

One Alcatel cellular telephone, Model 5065N, IMEI: 014705004360531 (**"Target Telephone 6"**) as described in Attachment A-6 and incorporated herein,

One Samsung cellular telephone, Model SM-G531H, IMEI: 358174072372023 (**"Target Telephone 7"**) as described in Attachment A-7 and incorporated herein,

One LG cellular telephone, Model LGMS450, IMEI: 014153000722885 (**"Target Telephone 8"**) as described in Attachment A-8 and incorporated herein,

One GARMIN GPS, Model nuvi 255w, S/N: 1WM239654 (**"Target Device 1"**) as described in Attachment A-9 and incorporated herein,

One GARMIN GPS, Model nuvi, FCC ID: IPH-01278, IC: 1792A-01278 (**"Target Device 2"**) as described in Attachment A-10 and incorporated herein,

One TOMTOM GPS, Model 4EN52 Z1230, C/NO: BL4181CG5612 (**"Target Device 3"**) as described in Attachment A-11 and incorporated herein,

(collectively, "**Target Telephones and Devices**") and to seize evidence of crimes as outlined in Attachments B-1 to B-11, and incorporated herein, specifically Title 21, United States Code, Sections 841(a)(1) and 846, Conspiracy to Distribute Cocaine.

2. Defendants Gustavo GALLARZO-Rodrigues ("GALLARZO"), Omar GUTIERREZ-Soto ("GUTIERREZ"), and Jorge Luis SANCHEZ-Velazquez ("SANCHEZ") (collectively, "the Defendants") were arrested on May 12, 2017, near Perris, California after 135.48 kilograms (298.05 pounds) of cocaine were off-loaded from a tractor-trailer truck which had entered the Otay Mesa Cargo Port of Entry. Homeland Security Investigation Special Agents seized **Target Telephones and Devices** located on the defendants' persons and in the tractor-trailer incident to their arrest. **Target Telephones and Devices** are currently being stored as evidence at United States Department of Homeland Security, Immigration and Customs Enforcement, Homeland Security Investigations, 2297 Niels Bohr Court, San Diego, California 92154.

3. Based on the information below, there is probable cause to believe that a search of **Target Telephones and Devices** will produce evidence of the aforementioned crimes, as described in Attachments B-1 to B-11.

## TRAINING AND EXPERIENCE

4. I am a Special Agent with Homeland Security Investigations (HSI) and have been so employed for 11 years. As a federal agent, I am authorized to investigate violations of laws of the United States and to execute warrants issued under the authority of the United States. I have directed or otherwise been involved in investigating violations of federal law, including the importation and distribution of narcotics.

5. I am currently assigned to the HSI Office of the Deputy Assistant Special Agent in Charge (DSAC), San Ysidro, California, in the Cargo Based Smuggling Group (CBSG). I have attended and successfully completed the Criminal Investigator Training Program (CITP) and the Immigration and Customs Enforcement Special Agent Training (ICESAT) located at the Federal Law Enforcement Training Center (FLETC) in Glynco,

GA. I have also completed the U.S. Customs Service Inspector Academy located at the FLETC in Glynco, GA in January 1999. I graduated from San Diego State University with a Bachelor's of Science degree in Criminal Justice Administration. I also graduated from the University of Phoenix with a Master's degree in Business Administration.

6. Throughout my tenure with HSI, I have conducted and/or participated in numerous investigations including commercial fraud, narcotics, tunnel, and financial crimes. As part of my duties with the CBSG, I investigate criminal violations relating to narcotic investigations and counterfeit goods including violations pertaining to the conspiracy to distribute a controlled substance, in violation of Title 21, U.S.C., §§ 841(a)(1) and 846.

7. In the course of my duties, I have worked as the case agent, directing specific drug-related investigations. I have also worked as a surveillance agent and observed and recorded movements of individuals trafficking in drugs and of those suspected of trafficking in drugs. Additionally, I have participated in the execution of numerous search warrants. I have initiated and executed numerous arrests for drug-related offenses, including possession with the intent to distribute and the importation of controlled substances. I have interviewed defendants, witnesses, and informants related to the illegal trafficking of controlled substances. Through these experiences, I have gained a working knowledge and insight into the normal operational habits of narcotics smugglers, with particular emphasis on those who attempt to import narcotics into the United States from Mexico at the San Diego international ports of entry. I have had numerous discussions with other HSI agents, as well as other narcotics investigators, who have advised me about the substance of their similar experiences and the results of their own investigations and interviews.

8. Through the course of my training, investigations, and conversations with other law enforcement personnel, I am aware that it is a common practice for narcotics smugglers to work in concert with other individuals and to do so by utilizing cellular

telephones, pagers, portable radios and GPS devices to maintain communication and location information with co-conspirators in order to further their criminal activities. This is particularly true in cases involving distribution amount quantities of controlled substances, such as cocaine. Typically, load drivers smuggling controlled substances across the border are in telephonic contact with co-conspirators immediately prior to, during and following the crossing of the narcotic load, at which time they receive instructions on how to cross and where and when to deliver the controlled substance. From my training and experience, I am aware that narcotics smugglers and their organizations use cellular, digital, and satellite telephones, in part, because these individuals believe law enforcement is unable to track the originating and destination phone numbers of calls placed to and from cellular, digital, and satellite telephones.

9. Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in narcotics smuggling investigations, I am also aware that:

a. Drug smugglers will use cellular telephones because they are mobile and they have instant access to telephone calls, text, web, and voice messages;

b. Drug smugglers will use cellular telephones and GPS devices because they are able to actively monitor the progress of their illegal cargo while the conveyance is in transit;

c. Drug smugglers and their accomplices will use cellular telephones and GPS devices because they can easily arrange and/or determine what time their illegal cargo will arrive at predetermined locations;

d. Drug smugglers will use cellular telephones and GPS devices to direct drivers to synchronize an exact drop off and/or pick up time of their illegal cargo;

e. Drug smugglers will use cellular telephones to notify or warn their accomplices of law enforcement activity to include the presence and posture of marked and unmarked units, as well as the operational status of checkpoints and border crossings; and

f. The use of cellular telephones by smugglers tends to generate evidence that is stored on the cellular telephones, including, but not limited to emails, text messages, photographs, audio files, call logs, address book entries, IP addresses, social network data, and location data.

g. The use of GPS devices by smugglers tends to generate evidence that is stored on the GPS, including, but not limited to address book entries and location data.

10. Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in narcotics smuggling investigations, and all the facts and opinions set forth in this affidavit, I know that cellular/mobile telephones can and often do contain electronic records, phone logs and contacts, voice and text communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. I also know that GPS devices can and often do contain electronic records and data such as contactslocation data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone. Specifically, I know based upon my training, education, and experience investigating these conspiracies that searches of cellular/mobile telephones yields evidence:

a. tending to identify attempts to import cocaine or some other controlled substance from Mexico into the United States and distribute cocaine or some other controlled substances within the United States;

b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation cocaine or some other controlled substance from Mexico into the United States and the distribution of cocaine or some other controlled substances within the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in the importation of cocaine or some other controlled substance from Mexico into the United States and the distribution of cocaine or some other controlled substances within the United States;

d. tending to identify travel to or presence at locations involved in the importation of cocaine or some other controlled substance from Mexico into the United States and the distribution of cocaine or some other controlled substances within the United States, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the subject telephone; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

11. In preparing this affidavit, I have conferred with other agents and law enforcement personnel who are experienced in the area of narcotics investigations, and the opinions stated here are shared by them. Further, I have personal knowledge of the following facts, or have had them related to me by persons mentioned in this affidavit. This statement is made in support of an application for a warrant to search **Target Telephones and Devices** that are believed to contain evidence of violations of 21 U.S.C. §§ 841(a)(1) and 846.

12. Because this affidavit is being submitted for the limited purpose of establishing probable cause to obtain a search warrant, it does not contain all of the information known to federal agents regarding this investigation. Instead, it contains only those facts believed to be necessary to establish probable cause. In addition, information contained in this affidavit is based upon reviews of official reports and records, upon conversations with other Homeland Security Investigations Special Agents, and my personal observations and knowledge. When the contents of documents or statements of others are reported herein, they are reported in substance and in part unless otherwise indicated.

## FACTS SUPPORTING PROBABLE CAUSE

13. On May 12, 2017, at approximately 11:02 a.m., GALLARZO entered the United States from Mexico at the Otay Mesa, California Cargo Port of Entry. GALLARZO, a Mexican citizen, was the driver and sole occupant of a 2010 Kenworth tractor and flatbed trailer, both bearing California license plates. The trailer contained pallets of concrete pavers (floor blocks), as reflected in the Cargo Manifest. The Consignee for the cargo was

a business in Riverside, California. GALLARZO presented his Border Crossing Card to the primary inspection Customs and Border Protection Officer ("CBPO"). The CBPO referred the tractor-trailer to the HCV Gantry X-ray system.

14. Instead of driving through the Gantry X-ray system, GALLARZO drove through the Vacis 2 X-ray system. At the time GALLARZO entered, there was not a line for the Gantry X-ray system. GALLARZO parked the tractor-trailer to dock space 62 in the dock area reserved for intrusive inspections. GALLARZO sat in a waiting area away from the tractor-trailer. CBPO Godinez searched the contents of the trailer with the assistance of his assigned Narcotics Detection Dog. The canine alerted to two of the pallets of concrete pavers.

15. At approximately 1:15 p.m., CBPO Gutierrez observed GALLARZO acting nervous while waiting for the intrusive inspection. GALLARZO fidgeted his hands, continuously looked around, and kept standing up to try to walk toward his trailer. CBPO Gutierrez advised GALLARZO on two different occasions to remain seated. GALLARZO responded to CBPO Gutierrez that he wanted to make sure they loaded up his merchandise correctly. CBPO Gutierrez inspected GALLARZO's paperwork and noticed he went through the incorrect X-ray inspection.

16. CBPO Randolph then conducted a physical inspection of the pavers on the trailer. Officer Randolph discovered a package wrapped with black tape hidden within a concrete paver. After probing the package, she discovered a white, powdery substance which field-tested positive for cocaine. CBPO Randolph noticed that the only pavers which contained black packages were located within two pallets of the pavers. CBP Officers placed those two pallets on the left side at the end of the flatbed trailer.

17. I responded to the Otay Cargo Port of Entry and continued the investigation. GALLARZO was allowed to continue his journey with the packages of cocaine in the trailer bed. Agents conducted surveillance as GALLARZO drove north. GALLARZO drove north to Perris, California. Agents observed GALLARZO stop at a lot surrounded

by a chain link fence which had other pallets lining the fence. The location had two sheds made out of plywood. There was no business name or address displayed. Agents observed GALLARZO get out of the truck and meet with two Hispanic males, later identified as GUTIERREZ and SANCHEZ. Agents saw GALLARZO, GUTIERREZ, and SANCHEZ off-load the pallets from the trailer, and noticed they set the two targeted pallets away from the rest of the other pallets. GALLARZO, GUTIERREZ, and SANCHEZ stood by the targeted pallets and talked. SANCHEZ tossed a small package to GALLARZO.[1] Agents arrested GALLARZO, GUTIERREZ, and SANCHEZ and seized the two pallets offloaded from the truck. Agents discovered 120 packages of cocaine were concealed within the pallets which weighed approximately 135.48 kilograms (298.05 pounds) total.

18. **Target Telephones 1 and 2** were seized from SANCHEZ. **Target Telephones 3 through 6** were seized from GUTIERREZ. **Target Telephones 7 and 8** were seized from GALLARZO, and **Target Devices 1 through 3** were seized from GALLARZO's tractor.

19. Based upon my experience investigating narcotics smugglers using cargo vehicles and the particular investigation in this case, I believe that GALLARZO, GUTIERREZ, and SANCHEZ likely used **Target Telephones and Devices** to coordinate the conspiracy to distribute cocaine in the United States. Based on my investigation of drug importation and distribution conspiracies, telephone contact with smugglers can begin several weeks before drugs are loaded in the vehicle and includes coordination on crossing the border to develop a crossing history or pattern. I respectfully request permission to search **Target Telephones and Devices** for data beginning on April 12, 2017, up to and including May 12, 2017.

20. I also know that recent calls made and received, telephone numbers, contact

---

[1] Agents later recovered this package from GALLARZO, and it contained $2,500 cash. Based on my training and experience investigating narcotics trafficking involving tractor trailers, and in speaking to drivers, $2,500 is substantially more than what drivers would get paid for driving loads of legitimate merchandise.

names, electronic mail (e-mail) addresses, appointment dates, text messages, pictures and other digital information are stored in the memory of **Target Telephones and Devices** which may identify other persons involved in narcotics trafficking activities. Additional contact information for others possibly involved in the conspiracy to distribute controlled substances can be adduced from **Target Telephones and Devices**.

21. Based upon my experience and training, consultation with other law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that information relevant to the narcotics smuggling activities of GALLARZO, GUTIERREZ, and SANCHEZ, such as telephone numbers, made and received calls, contact names, electronic mail (e-mail) addresses, appointment dates, messages, pictures and other digital information are stored in the memory of **Target Telephones and Devices**.

## METHODOLOGY

22. It is not possible to determine, merely by knowing the cellular telephone or GPS device's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular telephone and GPS service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the devices may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones and GPS devices do not have hard drives or hard drive equivalents and store information in volatile memory within the devices or in memory cards inserted into the devices. Current technology provides some solutions for acquiring some of the data stored in some cellular

telephone and GPS models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

23. Following the issuance of this warrant, I will collect the subject cellular telephones and GPS devices and subject them to analysis. All forensic analysis of the data contained within the telephones or GPS devices and their memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

24. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days, absent further application to this court.

## CONCLUSION

25. Based on all of the facts and circumstances described above, I believe that probable cause exists to conclude that GALLARZO, GUTIERREZ and SANCHEZ used **Target Telephones and Devices** to facilitate the offense of conspiracy to distribute cocaine. **Target Telephones and Devices** were likely used to facilitate the offense by transmitting and storing data, which constitutes evidence of violations of Title 21, United States Code, Sections 841(a)(1) and 846.

26. Because **Target Telephones and Devices** were seized, there is probable cause to believe that evidence of illegal activity related to conspiracy to distribute controlled substances committed by GALLARZO, GUTIERREZ and SANCHEZ continue to exist on **Target Telephones and Devices**.

27. WHEREFORE, I request that the court issue a warrant authorizing HSI Special Agents and/or other federal and state law enforcement officers to search the items described in Attachments A-1 to A-11, and to seize items listed in Attachments B-1 to B-11, using the methodology described above.

I swear the foregoing is true and correct to the best of my knowledge and belief.

Enrique Torregrosa
Special Agent
Homeland Security Investigations

Subscribed and sworn to before me this 9th day of June, 2017.

HON. NITA L. STORMES
United States Magistrate Judge